**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA, LOCAL 189, | Case No. 2:24-cv-4159 |
| Plaintiff, | JUDGE DOUGLAS R. COLE Magistrate Judge Vascura |
| v. | |
| SAUER GROUP, LLC, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 189 (Local 189, or the Union) and Defendant Sauer Group, LLC (Sauer) took a grievance to arbitration. Local 189 lost. (*See generally* Arb. Rec., Doc. 9). Seeking to undo that result, Local 189 brought this case. The Union now moves for Summary Judgment Vacating and Remanding the Arbitration Opinion and Award (Doc. 11). That is a steep hill for the Union to climb; federal courts review labor arbitrators' decisions with a heavy dose of deference. But the Court nonetheless finds that the arbitrator here crossed a red line when he relied on the parties' past conduct as the sole basis for ignoring the collective bargaining agreement's plain language. So, as further explained below, the Court **GRANTS** Local 189's Motion for Summary Judgment (Doc. 11), **VACATES** the arbitrator's decision and award, and **REMANDS** this dispute back to arbitration.

## BACKGROUND

Local 189 is a constituent part of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. The present dispute involves a multi-employer collective bargaining agreement (CBA) that Local 189 negotiated with the Mechanical Contractors Association of Central Ohio, Inc. The latter entity acted as the bargaining agent for its employer members and other non-member employers who wished to sign the agreement (collectively, the signatory employers), all of whom are contractors in the plumbing and pipefitting industry who employ Union members. Defendant Sauer is one such contractor. This case involves a work-jurisdiction dispute under the CBA.

The dispute began when Local 189 discovered Sauer attempting to use *pre-piped* variable airflow volume (VAV) boxes at a Union job site (i.e., a VAV box in which pipes were already installed at the time of delivery). (Doc. 11, #755). Local 189 maintains that using these pre-piped VAV boxes violated the terms of the CBA. (*Id.* at #754). Local 189's reasoning goes like this. First, a VAV box is a "fixture for air conditioning, heating and cooling" as the CBA uses that term. (Pl.'s Proposed Undisputed Facts, Doc. 11-1, #767). Second, the Union's jurisdiction under the CBA extends to "[a]ll piping, setting and hanging of all units and fixtures for air conditioning, cooling, [and] heating." (*Id.* (quoting CBA, Doc. 9-2, #326)). So, Local 189 says, Sauer's use of pre-piped VAV boxes encroaches on the Union's exclusive jurisdiction. (Doc. 11, #754–55). In other words, the Union asserts that the CBA awards to it "all piping" on fixtures like VAV boxes. So, according to the Union, that means that Union members must install the piping in VAV boxes, rather than Sauer

purchasing them as a completed unit from third parties who had used employees who were not part of the international union to which Local 189 belonged to install the pipes.

On September 1, 2023, a Local 189 member contacted leadership to report that pre-piped VAV boxes had arrived on a job site without a fabrication label indicating that the piping had been done elsewhere by members of the international union. (Doc. 11-1, #767–68). So, four days later, Local 189 contacted Sauer by letter. (*Id.* at #768). There, it offered to forgo filing a grievance and instead accept a reduced amount in restitution for the allegedly lost work—an offer Sauer rejected. (*Id.*). Local 189 then filed a grievance, which Sauer also rejected. (*Id.*). Pursuant to the CBA, the parties went to arbitration. (*Id.*).

"The arbitrator denied the Union's grievance." (*Id.* at #769). While the parties dispute the exact reasoning underlying that denial, they agree that the arbitrator found that "a VAV box is one of the methods for air conditioning, cooling or heating under Paragraph 33 of Appendix A [of the CBA]"—in other words, it is a covered fixture. (*Id.* at #768 (quoting Arb. Op. and Award, Doc. 9-5, #725)). And they further agree that he found Paragraph 33 of Appendix A to contain no ambiguity in its statement that "**[a]ll piping**, … of all units and fixtures for air conditioning, cooling, heating, …, by any method, …' is the work jurisdiction of UA [Local 189] members." (*Id.* (quoting Doc. 9-5, #745)).

But beyond that, differences emerge. According to Local 189, the arbitrator denied the grievance despite finding that the piping of a VAV box unambiguously fell

3

within the Union's jurisdiction under the CBA's express terms. Specifically, Local 189 says that the arbitrator "found that 'the actual practice of the parties … is different than the apparently unambiguous language,'" in the CBA. (*Id.* at #768 (quoting Doc. 9-5, #745)). And confronted with the difference between the two, the arbitrator "determine[d] that the conduct of the parties should prevail as a modification and amendment of what appears to be unambiguous contract language." (*Id.* (quoting Doc. 9-5, #745)). Or in other words, "[t]he arbitrator determined that the Parties' past practice had 'modified the express language of the agreement.'" (*Id.* at #769 (quoting Doc. 9-5, #746). And he reached this result despite an express limitation on his authority in the CBA: "[t]he decision of the arbitrator shall not be contrary to, amend, add to, or eliminate any of the provisions of this Agreement." (Doc. 9-2, #305).

Sauer disputes[1] Local 189's description of the arbitrator's opinion—particularly the Union's claim that the arbitrator found that it was the parties' "past practice" that modified the agreement. (Doc. 14-1, #794). Instead of past practice, Sauer points to the arbitrator's statement that it was "[t]he understanding by the parties [that] modified the express language of the agreement." (*Id.* (quoting Doc. 9-

---

[1] Typically, a movant must show the absence of a genuine dispute of material fact to prevail at summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Here, Sauer does not dispute any of Local 189's proposed material facts—only taking issue with the Union's characterization of two quotes by the arbitrator. (*See* Def.'s Resp. to Pl.'s Proposed Undisputed Facts, Doc. 14-1, #793–94). And the Court does not reexamine the arbitrator's factual findings, instead limiting its inquiry to whether the arbitrator exceeded his authority, a question of law. *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir. 2000). So, the question at summary judgment becomes, on the undisputed facts, whether the Union is entitled to judgment vacating the arbitral award as a matter of law.

5, #746) (emphasis omitted)). In other words, Sauer argues that the arbitrator found that *the parties agreed to modify their agreement*, and that their ensuing conduct (what Local 189 calls "past practice") simply reflected that new agreement. That is, the conduct itself did not give rise to the modification; rather, it was merely evidence that the arbitrator relied upon to find that the parties had agreed (presumably by some other means) to modify the CBA.

Unhappy with the result it received in arbitration, Local 189, which is a labor organization under the Labor Management Relations Act (LMRA), sued in this Court under Section 301 of that Act, 29 U.S.C. § 185(c). (Doc. 1). It asks the Court to vacate the arbitral award. (*Id.*). In support, the Union advances three counts, all resting on its argument that the arbitrator decided the grievance based on the parties' past practice instead of on the CBA's unambiguous language. (*Id.* at #5–9). Specifically, the Union claims that: (1) the award is rooted in a mistake of law; (2) the arbitrator did not arguably construe or apply the CBA; and (3) the arbitrator acted outside his authority. (*Id.*). After Sauer answered, (Doc. 3), and the parties jointly filed the arbitral record, (Doc. 9), Local 189 filed the present Motion for Summary Judgment Vacating and Remanding the Arbitration Opinion and Award (Doc. 11).

In its motion, Local 189 characterizes its arguments slightly differently than those it pressed in its Complaint. It now argues that the arbitrator's award should be vacated because (1) "it reaches a question and resolves a dispute not submitted to arbitration" and (2) "it does not arguably construe the CBA but instead disregards the CBA's clear and unambiguous language." (*Id.* at #759–65 (cleaned up)). These

5

arguments are relatively straightforward and again both boil down to essentially one claim—that the arbitrator ignored unambiguous language in favor of the parties' past practice, which Local 189 claims violates "fundamental principles of contract interpretation." (*Id.* at #765).

To explain that a little more fully, Local 189 asserts in its first argument that the arbitrator was presented only with the issue of "[w]hether the Employer's purchase and installation of pre-piped VAV boxes violated the applicable terms of the parties' [CBA]," (*id.* at #759 (quoting Doc. 9-5, #697)), and *not* the separate question of whether the parties' conduct had modified the terms of that agreement, (*id.* at #759–60). So, in deciding the grievance based on his view that the parties modified the agreement, rather than deciding it based on his interpretation of the CBA's language as written, the arbitrator allegedly "reached a question not submitted to arbitration [and] acted outside of his authority." (*Id.* at #760). And the Union's second (and related) argument is that, even assuming the arbitrator did reach the correct "dispute," he decided it improperly. (*Id.*). According to the Union, by relying on past practice as the basis for finding a modification, "the arbitrator disregarded the contract's plain language" and thus "failed to construe or apply the contract at issue." (*Id.* at #764–65).

Sauer offers a multi-layer response that starts with a procedural objection. On the procedural front, it claims that a motion for summary judgment "is the wrong vehicle for this challenge" under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (FAA). (Doc. 14, #773). Rather, if Local 189 prevails, Sauer says the "appropriate

judicial action" would instead be "an order from the Court vacating and remanding the dispute back to FMCS arbitration." (*Id.* at #773–74). Turning to the substance, Sauer defends the arbitrator's decision by claiming that it merely reflected a "belt-and-suspenders" award—i.e., it was based on multiple rationales. (*Id.* at #774). And Sauer claims that Local 189's past-practice/modification argument completely ignores the arbitrator's primary rationale—his finding that "Article XII of the CBA expressly authorized the Employer to purchase equipment like pre-manufactured VAV boxes from third parties and to have them installed by the Union." (*Id.* at #774–75). According to Sauer, Local 189 attacks only the arbitrator's "secondary rationale," which Sauer concedes rested on modification. (*Id.* at #775). But even there, Sauer says, the arbitrator did not act beyond his authority. (*Id.*). Finally, Sauer closes by arguing that, even if the arbitrator made an analytical mistake, the Court cannot vacate the award as the arbitrator drew his result from the "essence of the agreement." (*Id.* at #775–76). Local 189 replied, (Doc. 17), so this matter is ripe for the Court's review.

## LEGAL STANDARD

"Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Loc. 664C*, 532 F.3d 405, 410 (6th Cir. 2008). But in a typical labor arbitration dispute, where the parties jointly submit the factual record, (*see* Doc. 9), there is no dispute over material

7

facts. So, the Court is only concerned with the second part of the summary judgment standard, which requires the movant to show that the facts entitle it to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When determining whether to vacate and remand an arbitrator's decision in a labor dispute, a Court must be "highly deferential." *Browning-Ferris Indus. of Ohio, Inc. v. Int'l Bhd. of Teamsters, Loc. Union No. 20*, No. 20-4073, 2022 WL 684579, *4 (6th Cir. Mar. 8, 2022). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). More specifically, a court should not discard an award "unless the arbitrator (1) committed fraud or other dishonesty, (2) resolved a dispute the parties did not submit to him, or (3) did not arguably interpret and apply the collective bargaining agreement." *Zeon Chemicals, L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 982 (6th Cir. 2020) (citing *Mich. Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 751–52 (6th Cir. 2007) (en banc)).

## LAW AND ANALYSIS

The Union objects to the substance of the arbitrator's award, but Sauer objects to the procedural mechanism by which Local 189 advances its objections. So, before addressing the substantive arguments, the Court begins with Sauer's procedural objection. Finding it wanting, the Court then turns to the substance of the dispute.

8

1.     On the procedural front, Sauer says that, under the FAA, a motion for summary judgment to vacate an arbitration award is procedurally improper. (*See* Doc. 14, #773–74). That may well be so, but this case does not fall within the FAA's purview. This is a labor dispute. Local 189 did not sue under the FAA. Rather, it sued under 29 U.S.C. § 185, the LMRA. (Doc. 1, #2). And under *that* statute, motions for summary judgment are appropriate vehicles to adjudicate whether an arbitral award should be vacated and remanded to the arbitrator. *See, e.g., Browning-Ferris*, 2022 WL 684579, at *3; *Mich. Fam. Res.*, 475 F.3d at 750. So, Sauer's procedural concerns are misplaced. That said, the Court agrees with Sauer that the proper remedy here, should Local 189 prevail (and the Court finds that it does, see below), is to vacate the award and remand the dispute back to arbitration. (Doc. 14, #774).

2.     Turn now to the merits. As noted above, in reviewing the substance of an arbitral award under the LMRA, the Court plays a uniquely limited role. Specifically, the Court looks only for fraud, the arbitrator deciding an issue not presented, or the arbitrator failing to interpret or apply the agreement in resolving the dispute. *Zeon Chemicals, L.P.*, 949 F.3d at 982. Local 189 does not suggest any fraud, but it does claim that the latter two bases for reversal apply. Specifically, it contends that the arbitrator concluded that the CBA *unambiguously* favored Local 189 on the issue presented, but nonetheless denied the grievance, which it says is arbitrator conduct that falls in one or both of the latter two forbidden categories. Sauer, though, says that Local 189 mischaracterizes what the arbitrator actually did. So, to resolve this dispute, the Court must address two issues. First, the Court must

determine what reasoning the arbitrator in fact employed (i.e., which party has correctly characterized the arbitrator's decision). Second, while keeping in mind the heavy deference owed to the arbitral award, the Court must decide whether that reasoning is permissible.

a. Start with the characterization question. In deciding who correctly characterizes the arbitrator's reasoning, the Court must resolve two basic points of disagreement between the parties—(1) what was the arbitrator's "primary rationale"?, and (2) did the arbitrator find the CBA language at issue to be unambiguous before turning to the extrinsic evidence? (To be clear, as to the latter, whether it *matters* that he used extrinsic evidence to interpret unambiguous language (if that is what he did) actually goes to the question of whether the arbitrator's reasoning was permissible. At this first step of the analysis, the Court is simply inquiring as to what the arbitrator in fact did.)

The first of these two disagreements is easy to resolve. The Court rejects Sauer's argument that the "[a]rbitrator's primary … rationale is the controlling language of Article XII." (Doc. 14, #774). As the Court reads the award, the arbitrator did not actually rely on the language of Article XII of the CBA as the basis for denying the grievance. While the arbitrator admittedly found that the VAV boxes were "tested and started by Local 189 members in compliance with Article XII," (Doc. 9-5, #748–79), he did so *after* the opinion and award had already found there to be "an agreed amendment of the collective bargaining agreement under specific circumstances," (*id.* at #747). In other words, it was only because the arbitrator determined that the

10

parties had modified the agreement that the arbitrator found that the CBA, including Article XII, had not been violated.  (*Id.* at #746). It was "the *modification* [that] allow[ed] the purchase and installation of fully-integrated pieces of manufactured equipment, including the pre-piped VAV boxes at issue in this case." (*Id.* (emphasis added)). And the better explanation for the arbitrator's reference to conduct "in compliance with Article XII" is that the arbitrator simply means exactly what he said—that Local 189 members "tested and started" the VAV boxes as Article XII provides. (*See id.* at #748–49). But testing and starting are functions separate and apart from the "pre-piping" issue that Local 189 raises here. So, Sauer's "belt-and-suspenders" framing is wrong.

Now, turn to the second part of the characterization question, whether the arbitrator found ambiguity—specifically in the language of Paragraph 33 of Appendix A, which defines the Union's exclusive work jurisdiction. That is admittedly a closer call, largely because the arbitrator hedged a bit by including qualifiers every time he discussed the ambiguity issue: "*[o]n its face* … [the provision] contains no ambiguity"; "*apparently* unambiguous language"; "what *appears to be* unambiguous contract language." (*Id.* at #745 (emphases added)). Given the qualified language, Local 189 maintains, perhaps not surprisingly, that the arbitrator found that language to be unambiguous, (Doc. 11, #754), while Sauer instead claims that the arbitrator found "latent ambiguity," (Doc. 14, #786).

What is clear to the Court, though, is that whatever qualifiers the arbitrator may have used, he *treated* the language as unambiguous. That is, the arbitrator's

11

opinion includes no language suggesting that he was using extrinsic information, whether about the parties' past practice or anything else, to *interpret* ambiguous language. (*See* Doc. 9-5). For example, nowhere does he say anything along the lines of: "I find the contract term 'all piping' ambiguous, and thus construe it through the lens of extrinsic evidence as allowing the use of pre-piped VAV boxes." Instead, as the arbitrator himself puts it, he found that the parties themselves had "modif[ied] the *express* contract language" by "agreement"—an agreement he "inferred" from the "clear and consistent practice" of the parties. (*Id.* at #746 (emphasis added)). While he perhaps could have expressed the point more clearly, the only reasonable interpretation of the arbitrator's award is that he found that Appendix A, as written, unambiguously placed piping VAV boxes within the Union's jurisdiction. (*See id.* at #745). But he nonetheless ruled against Local 189 because, based on extrinsic evidence, he found that the parties had agreed to modify the provision to allow the use of pre-piped VAV boxes. (*Id.* at #746)

In sum, the Court finds that the arbitrator's award did not rely on Article XII, and that he further determined that Sauer's conduct violated the unambiguous language of Appendix A as written, but that he nonetheless denied the grievance based on the parties' alleged modification of the CBA. It was modification, not interpretation, that drove the arbitrator's award.

12

b.      So now the Court must decide whether, understood that way, the arbitral award is subject to vacatur.[2] On that front, Local 189 presses two arguments—that the arbitrator decided an issue (modification) that the parties had not placed before him, and that the arbitrator's rejection of the agreement's plain language based on the alleged modification meant his award did not draw its essence from the contract. While those are typically two separate inquiries, here, the second (whether he arguably construed the agreement) turns in some ways on the first (whether he decided something he lacked authority to decide).[3] To see why that is so, look at the arbitrator's opinion. There, the arbitrator found the language at issue to be unambiguous *as written* but took "notice of a modification … made by the parties" and interpreted the CBA *as modified*. (Doc. 9-5, #746). Or, in other words, he disregarded the written words of the CBA—the opposite of "construing or applying" it. *See Dematic Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW)*, 635 F. Supp. 2d 662, 678 (W.D. Mich. 2009) (citation omitted). The arbitrator justified his doing so by finding a modification. So, the relevant question is whether finding that modification (and disregarding the language of the

---

[2] Local 189 does not argue that the arbitrator's finding of a modification was inaccurate or unsupported by the facts. This is for good reason; that finding by the arbitrator is owed heavy deference. So, the Court does not weigh in on whether the relevant testimony in the record supports the finding that the parties had agreed to modify the CBA.

[3] Local 189 frames these two questions differently than the Court. As discussed below, the Court rejects Local 189's first argument for why the arbitrator exceeded his authority. But that question is ultimately broader than just what issue was placed before the arbitrator by the grievance. The Court must also answer whether the arbitrator exceeded more general limitations on his power—limitations either from the law or the CBA itself.

13

CBA) exceeded his authority, because if so, he certainly did not "arguably constru[e] or apply[] the contract." *Mich. Fam. Res.*, 475 F.3d at 753.

When does an arbitrator exceed the scope of his authority?[4] "An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority *only* when the [CBA] does not commit the dispute to arbitration." *Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 901 (6th Cir. 2012) (quoting *Mich. Fam. Res.,* 475 F.3d at 756 (emphasis added)). Or, in other words, an arbitrator exceeds his authority when he decides something the CBA did not delegate to him. This makes sense in a dispute such as the present case, where the arbitrator's authority is derived entirely from the fact that the parties bargained to send their CBA disputes to arbitration. (*See* Doc. 9-2, #304–05 (discussing grievance procedures)).

The most obvious way an arbitrator exceeds his jurisdiction is when he steps outside the subject matter of the grievance presented to him—e.g., he is presented with a grievance regarding overtime pay but instead issues a ruling on unsafe working conditions. *See AWP, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 5:24-cv-1995, 2026 WL 120216, *5 (N.D. Ohio Jan. 16, 2026) (discussing when a dispute "falls outside of the grievance filed"). But that is not the situation here. The

---

[4] While courts must afford arbitrators significant deference in their fact findings and legal conclusions, that only extends to the arbitrator's *findings*, not to the scope of the arbitrator's authority nor to whether an arbitrator's approach is "arguably construing or applying the contract." *Mich. Fam. Res.*, 475 F.3d at 753. For example, here the Court *defers* to the arbitrator's finding that the CBA was unambiguous and to the finding that parties previously modified the CBA but does *not defer* in deciding whether "he was engaged in interpretation." *Id.*

arbitrator was presented with the question of whether purchasing pre-piped VAV boxes violated the CBA, and that is what he decided. (Doc. 9-5, #749). So, he did not exceed the scope of his authority by reference to the subject matter of the dispute.

Local 189 says otherwise, but it bases its argument on a misunderstanding of what "the dispute" was that the parties had committed to arbitration under this specific grievance. (*See* Doc. 11, #759–60). In the Union's telling, the issue presented in each grievance does not mean simply the subject matter that the parties have asked the arbitrator to decide (here, pre-piped VAV boxes), but also extends to the interpretive theories that the parties have asked the arbitrator to employ. (*Id.*). That is, according to Local 189, here the parties asked the arbitrator only to determine whether the CBA *itself* required a certain outcome. (*Id.*). So by instead looking at extrinsic evidence to find a modification, the arbitrator answered a question the parties had not presented. (*Id.*).

The Court disagrees. When parties collectively bargain to submit their disputes to arbitration, they are agreeing to submit "question[s] of contract interpretation [to] the arbitrator." *Mich. Fam. Res.*, 475 F.3d at 750 (quoting *United Steelworkers of Am.*, 363 U.S. at 568). So, if the parties ask the arbitrator to determine whether the CBA allows for use of pre-piped VAV boxes, they are necessarily committing to the arbitrator the various theories of contract interpretation that may go into answering that question. In employing those theories, then, the arbitrator is not going outside the question presented. So, there was nothing in the grievance itself that prevented the arbitrator from finding a modification.

15

But the scope of the question presented is not the only limit on an arbitrator's power. Another limitation, of course, is that an arbitrator's award must also draw its essence from the contract itself—i.e., he must be at least "arguably construing or applying the contract." *Mich. Fam. Res.*, 475 F.3d at 753. That is sometimes expressed through that admonition that an arbitrator is not free to "dispense his own brand of industrial justice." *United Steelworkers of Am.*, 363 U.S. at 597. Consistent with that, "an arbitrator may construe ambiguous contract language, but lacks authority to disregard or modify plain or unambiguous contract provisions." *Sears, Roebuck & Co. v. Teamsters Loc. Union No. 243*, 683 F.2d 154, 155 (6th Cir. 1982). And this "plain meaning" rule has particular purchase in the labor dispute context. *See* Elkouri & Elkouri: *How Arbitration Works* ch. 9, § 9.2.A (Elizabeth J. Fabrizio ed., 2021) (ebook). One could argue then (and Local 189 does), that in disregarding his own finding that the CBA's language unambiguously puts "pre-piping" exclusively within the Union's purview, the arbitrator departed from this rule and thus did not construe or apply the contract *as written*.

But again, the twist here is the arbitrator disclaimed that he *himself* modified the CBA. That is, he nowhere suggests he is modifying the agreement to implement his own view of "industrial justice"; rather, he claimed to be simply construing the CBA *as modified* by the parties themselves. And that argument has at least some bite based on first principles of contract interpretation. It is a basic tenet of contract law that "[p]arties to a contract are free to modify it." *JSW Steel USA Ohio, Inc. v. Marubeni-Itochu Steel Am., Inc.*, No. 2:20-cv-3415, 2022 WL 18572393, *5 (S.D. Ohio

16

Apr. 14, 2022) (citations omitted). That is true even when a contract contains a "no oral-modification clause" or "anti-waiver" provision, as those provisions, "like any other contractual provision, can be waived by the parties." *Iron Horse Bar & Grill, LLC v. GGJ Triune, PLL*, 234 N.E.3d 620, 628 (Ohio Ct. App. 2024) (quoting *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 69 N.E.3d 1083, 1091 (Ohio Ct. App. 2016)). So, the arbitrator here, in finding a modification of the CBA, could be understood as merely following generally accepted principles of contract interpretation and thus making a good faith effort to construe the contract *as modified* by the parties. And remember, if he was merely interpreting, then even if the Court were to conclude that he made an interpretative error, that alone would not suffice for the Court to set aside the award. *Mich. Fam. Res.,* 475 F.3d at 756.

As a result, for the Union to prevail on its theory that the arbitrator exceeded his authority by looking to past practice to interpret unambiguous language (and by extension, that he did not arguably construe the contract in doing so), there must be some additional limit on an arbitrator's authority beyond those that the traditional contract-law interpretive principles discussed above impose. It appears, though, that that Union has identified just such a limiting principle. Courts in this Circuit, at least in cases involving CBAs that include express language foreclosing the arbitrator's authority to amend the agreement, have found that arbitrators do in fact step outside their authority when they infer a modification of a CBA from the parties' previous conduct alone. And while neither case the Court discusses on that topic below is

17

binding precedent in the strict sense of the term, the facts are sufficiently similar to the case at hand to make them compelling precedent.

Start with *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. TRW Auto. U.S. LLC*, 766 F. App'x 186 (6th Cir. 2019). There, the Sixth Circuit (admittedly in an unpublished decision) overturned a district court decision sustaining an arbitral award in an analogous situation. *Id.* at 197. That arbitrator had found that the CBA language "unambiguously set forth" what medical coverage the employer was required to provide, yet he nonetheless "ordered TRW to provide coverage that exceeded the requirements spelled out in the 'unambiguous language' of the CBA." *Id.* at 195 (cleaned up). He did this because (based on his interpretation of the parties' conduct) he "determined that the parties had entered a modification of the 2002 CBA in 2007" that required more generous coverage "than what would have been required under the clear terms of the CBA." *Id.* at 196. The district court upheld that arbitral award. *Id.* at 195.

The Sixth Circuit, though, reversed. *Id.* at 197. More specifically, it held that—in finding that modification—the arbitrator exceeded the scope of his authority. *Id.* This was so, the court held, because the CBA "expressly provided" that the arbitrator could not "alter or modify" it and restricted his authority to resolving questions "concerning the interpretation or application" of the agreement. *Id.* at 196–97. Indeed, the *UAW* court explicitly said that the arbitrator could not "justify his remedy by claiming that the parties *modified* the terms of the 2002 CBA in 2007," as doing so would "exceed[] the scope of his authority." *Id.* at 196 (emphasis added). And

18

because the arbitrator construed the CBA based on a modification when he did not have authority to do so, he "did not arguably construe or apply the 2002 CBA." *Id.* at 197.

Similarly, in *Dematic Corp.* a district court determined that an arbitrator's award was invalid because she "effectively disregarded" unambiguous CBA language in awarding six months of benefits instead of three. 635 F. Supp. 2d at 678 (emphasis omitted). There, like in *UAW*, the arbitrator had inferred from conduct that "the parties effectively altered facially clear contract language … on the length of time benefits." *Id.* at 668 (emphasis omitted). The court held that, in finding such a modification, the arbitrator "exceeded her authority and role as defined" by the CBA and "was not even arguably construing or applying the CBA" because she disregarded the section of the CBA stating that an arbitrator had "no power or authority to change this Contract in any respect, or to add or to take away any of its terms." *Id.* at 673, 678.

In sum, when a CBA has language specifically depriving an arbitrator of the power to change the parties' agreement—language present in the CBA here (*see* Doc. 9-2, #305)—it seems that language deprives arbitrators of the authority to infer a modification of that agreement from the parties' conduct alone. In other words, if arbitrators faced with such a CBA base their opinion on the CBA *as modified*, they fail to arguably construe or apply it.[5] Or, put more simply, "the arbitral decision

---

[5] The Court notes that the arbitrator failed to "arguably constru[e] or apply[] the CBA" in one other sense. *Dematic Corp.*, 635 F. Supp. 2d at 678 (citation omitted). "[T]he arbitrator here effectively disregarded [the] CBA section" expressly limiting his authority to modify the

should have been entirely based on the [original] CBA, rather than on a subsequent agreement between the parties." *UAW*, 766 F. App'x at 197.

That rule makes some sense, at least in this context. After all, the CBA at issue covers several different contractor-employers (all the Association members and any non-member employer signatories). If arbitrators are free to ignore plain language in light of "modifications" arising from party practice, then whose practices matter? Is Local 189's practice-based modification with one of the employers under the CBA binding on another? Against that backdrop, a rule holding parties (and the arbitrator) to the CBA's clear and *unambiguous* language helps avoid disputes, even though arbitrators remain free to rely on extrinsic evidence to address contractual ambiguity.

That said, from what the Court can glean, this rule against using past practice in the face of plain language also has limits. For example, when resolving an arbitral dispute requires an arbitrator to interpret multiple conflicting agreements, the arbitrator is permitted to "reconcile[] competing contract terms and the parties' practices to determine the 'common law of the shop.'" *Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 904. In other words, if multiple applicable contracts have plain language pointing in differing directions, the arbitrator can use the parties' practices to make sense of the competing commands. Likewise, the Court should be clear that it is not suggesting the no-inferring-modification rule in any way limits the common practice of using memoranda of understanding or supplementary agreements to modify or clarify a CBA's terms. *See* Elkouri & Elkouri: *How Arbitration Works* ch. 9,

---

agreement. *Id.* (emphasis omitted); (*see* Doc. 9-2, #305 ("The decision of the arbitrator shall not be contrary to, amend, add to, or eliminate any of the provisions of this Agreement.")).

§ 9.4 (Elizabeth J. Fabrizio ed., 2021) (ebook).[6] Indeed, Local 189 and Sauer presumably could have adopted one here. Rather, the point is simply that an arbitrator cannot use party practice as the basis for ignoring plain and unambiguous CBA language, whether the arbitrator purports to do so as a matter of interpretation or modification.

And, while the rule may be narrow, it controls where it applies. Here, the Court concludes that the arbitrator did that which the rule forbids—he relied on past practice to overcome the CBA's unambiguous plain language. As a result, the arbitrator acted outside his authority and thus did not arguably construe the CBA.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 189's Motion for Summary Judgment Vacating and Remanding the Arbitration Opinion and Award (Doc. 11). Accordingly, the Court **VACATES** the arbitrator's decision and award, and **REMANDS** this dispute to arbitration. Consistent with that, the Court **DIRECTS** the Clerk to enter judgment for Plaintiff and to **TERMINATE** this matter on the Court's docket

 **SO ORDERED.**

March 24, 2026
**DATE**

    **DOUGLAS R. COLE**
    **UNITED STATES DISTRICT JUDGE**

---

[6] Generally, memoranda of understanding and supplemental agreements are themselves considered part of the CBA, not extrinsic evidence.